UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| GUANG DONG LIGHT HEADGEAR FACTORY CO., LTD., | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action, File No. 5-03-CV-4165 |
| Plaintiff, | | |
| vs. | | |
| ACI INTERNATIONAL, INC. | | |
| Defendant. | | |

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

Plaintiff Guang Dong Light Headgear Factory Co., Ltd.'s ("Guang Dong") motion for summary judgment must fail for one simple reason: the arbitration agreements Guang Dong seeks to enforce were not part of any contract for payment between Guang Dong and defendant ACI International, Inc. ("ACI"). Because the so-called "sales contracts" between Guang Dong and ACI constitute nothing more than confirmations of orders placed by third-party China Pearl International Co. Ltd. ("China Pearl"), Guang Dong's attempt to enforce its foreign arbitration award should be rejected because it is not capable of settlement by arbitration under, and it is contrary to the public policy of, the United States law.

Even assuming solely for argument that ACI entered into a valid arbitration agreement with Guang Dong, Guang Dong's application for enforcement of the arbitration award must be disregarded because, at the time ACI and Guang Dong reached their agreement, they did not contract to arbitrate claims which would subject ACI to contractual liability for amounts owed to Guang Dong by China Pearl.

- 1 -

Plaintiff's claim that ACI's counter claim is barred by the doctrine of *res judicata* must also fail.  ACI's claim is based upon a written contract and implied covenants which centered on a subsequent business relationship which had no connection with the "sales contracts" at issue.  Because there are several genuine issues of material fact arising out of ACI's counter claim, summary judgment is not appropriate.

RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS

1.  Between July 26, 2000 and January 9, 2001, Guang Dong and ACI entered into fourteen (14) written contracts for the purchase, by ACI, of various types of caps from Guang Dong.  (See attached Ex. 2 pp. 3-16).

> RESPONSE: CONTROVERTED.  Between July 26, 2000 and January 9, 2001, ACI did not enter into any contract with Guang Dong for the purchase of caps from Guang Dong.  Affidavit of Christopher J. Davis ("Davis Affidavit"), ¶¶ 5-14, 21, 22, 25, 26; attached as Exhibit A.  Instead, ACI entered into contracts with China Pearl to purchase the hats identified in the Guang Dong "sales contracts" referenced in plaintiff's motion.  *Id.* at ¶¶ 12-16.  Non-party China Pearl then entered into contracts with Guang Dong for the manufacture and purchase of hats.  *Id.*

> 2.  The contracts by their terms contained within the contracts provided:
>
> "All disputes arising from the execution of, or in connection with this contract shall be settled amicably through friendly negotiation.  In case no settlement can be reached through negotiation, the case shall then be submitted to the Foreign Economic & Trade Arbitration Commission of the China Council for the promotion of International Trade, Beijing for arbitration in accordance with its provisional rules of procedure.  The arbitral award is final and binding upon both parties."

(See attached Ex. 2 pp. 3-16).

> RESPONSE: CONTROVERTED.  As established in its response to ¶ 1 (above), ACI and Guang Dong did not have any contractual relationship. *See id.* at ¶¶ 5-14, 21, 22, 25, 26.  ACI does not controvert that the "sales contracts" attached to plaintiff's motion contain the language referenced in ¶ 2 of plaintiff's Statement of Uncontroverted Facts.

3. Guang Dong filed an application for arbitration on December 4, 2001 and the China International Economic and Trade Arbitration Commission accepted the case. (See attached Ex. 1 p. 19).

RESPONSE: UNCONTROVERTED.

4. The Secretariat Bureau of the Arbitration Commission served the Defendant by EMS on December 7, 2001, the Arbitration Notice, the Application for Arbitration and its annexes filed by the Plaintiff as well as the Arbitration Rules of the Arbitration Commission and the List of Arbitrators and requested the Defendant to select arbitrators and submit its statement of defense in time.  (See attached Ex. 1 p. 19).

> RESPONSE: CONTROVERTED.  Aside from attaching self-serving statements in an unauthenticated and unverified English translation of a Chinese arbitration award, Guang Dong has not introduced any credible evidence establishing that ACI was properly and formally "served" with the Arbitration Notice, the Application for Arbitration and its annexes filed by the Plaintiff as well as the Arbitration Rules of the Arbitration Commission and the List of Arbitrators on December 7, 2001.  D. Kan. R. 56.1(d).  Moreover, Guang Dong has not provided any definition or explanation for the abbreviation "EMS" sufficient for ACI to properly answer Guang Dong's statement concerning the mode and method of service.

5. The Defendant signed for the receipt of all the above-mentioned arbitration documents on December 17, 2001.  (See attached Ex. 1 p. 19).

> RESPONSE: CONTROVERTED.  ACI adopts and incorporates its response to ¶ 4 (above).  ACI further notes that if indeed it was formally "served" on December 7, 2001 (as indicated above), it does not make any sense why ACI would have signed for the receipt of the arbitration documents on December 17, 2001.

6. On or about January 15, 2002 Notice was given to ACI notifying it of the formation of the panel of arbitrators for the dispute over the cap purchase and sale contract of caps.  (See attached Ex. 1 p. 7).

- 3 -

>RESPONSE: CONTROVERTED.  ACI adopts and incorporates its response to ¶ 4 (above).

7.   On or about January 15, 2002 Notice was given to ACI notifying it of the opening of the court session for the dispute over the cap purchase and sale contract of caps No. G20010386.  (See attached Ex. 1 p. 9.)

>RESPONSE: CONTROVERTED.  ACI adopts and incorporates its response to ¶ 4 (above).

8.   ACI received the Notice of the Opening of the Court Session for the Dispute of the cap purchase and sale contract of caps No. G20010386 on January 21, 2002.  (See attached Ex. 3 p. 6).

>RESPONSE: CONTROVERTED.  Because ACI had a contractual relationship with China Pearl, ACI understood that the "sales contract" forwarded to ACI by Guang Dong were sent so ACI could verify the type, price and quantities of the orders ACI had placed with China Pearl.  *Id*. at ¶ 13. Affidavit of Patrick N. Fanning, attached as Exhibit C.

9.   On February 28, 2002 the Arbitration Tribunal heard the case in Beijing as scheduled.  The Plaintiff appointed an attorney-in-fact to appear before the tribunal and the Defendant did not appear.  (See attached Ex. 1 p. 20).

>RESPONSE: CONTROVERTED.  ACI does not controvert that it did not have a representative appear in Beijing on February 28, 2002.  ACI does, however, controvert Guang Dong's allegations that the Arbitration Tribunal "heard the case" because Guang Dong has not come forward with any transcript or other properly authenticated and verified evidence establishing the manner in which the case was "heard" by the Arbitration Tribunal at issue.  D. Kan. R. 56.1(d).

10. The Arbitration Tribunal heard the case by default in accordance with the provisions of Article Forty-two of the Arbitration Rules.  (See attached Ex. 1 p. 20).

>RESPONSE: CONTROVERTED.  ACI does not controvert that the Arbitration Tribunal has entered a default.  ACI does controvert any statement or suggestion concerning the method in which the Arbitration Tribunal "heard the case" because Guang Dong has not come forward with any transcript or other properly authenticated and verified evidence

establishing the manner in which the case was "heard" by the Arbitration Tribunal at issue. D. Kan. R. 56.1(d).

11. The attorney-in-fact of the Plaintiff gave a presentation of the facts of the case at the hearing and answered the questions raised by the Arbitration Tribunal. (See attached Ex. 1 p. 20).

> RESPONSE: CONTROVERTED. ACI controverts any statement or suggestion concerning the method in which Guang Dong presented its case to the Arbitration Tribunal at issue or answered questions presented because Guang Dong has not come forward with any transcript or other properly authenticated and verified evidence establishing the manner in which the case was presented to the Arbitration Tribunal at issue. D. Kan. R. 56.1(d).

12. After the hearing, the Plaintiff submitted supplementary materials, which the Secretariat Bureau of the Arbitration Commission forwarded to the Defendant and notified the Defendant that it might still file a written statement of defense. (See attached Ex. 1 p. 20).

> RESPONSE: CONTROVERTED. Guang Dong has come forward with no affidavit, transcript or otherwise properly authenticated evidence establishing either that Guang Dong submitted supplementary materials or verifying that the alleged Arbitration Commission forwarded the materials at issue to ACI with notification that ACI might still file a written statement of defense. D. Kan. R. 56.1(d).

13. The Defendant failed to respond to the Arbitration Tribunal. (See attached Ex. 1 p. 20).

> RESPONSE: CONTROVERTED. ACI disagrees with the above-statement to the extent it suggests that ACI was given an opportunity to respond to the Arbitration Tribunal after the hearing. ACI hereby adopts and incorporates its response to ¶ 12 (above). Nevertheless, ACI states that it did not provide any statement to the Arbitration Tribunal itself. Davis Affidavit, ¶ 26.

14. On May 28, 2002, the Arbitration Tribunal made the following award:

"1. The respondent pays the claimant the amount in arrears for goods USD 205, 280.77;

2. The respondent pays the claimant the loan interest for the amount in arrears for goods USD 12,109.73;

3. The arbitration fee for this case RMB 73,973.00 shall be entirely borne by the respondent.
The claimant has paid RMB 73,973.00 in advance to the Arbitration Commission, which strikes a balance with the arbitration fee and therefore, the respondent shall indemnify the claimant RMB 73,973.00;

4. The money the respondent shall pay to the claimant mentioned above shall be fully paid by the former to the latter within 45 days from the date of this award.

(See attached Ex. 1 pp. 24-25).

RESPONSE: ACI controverts any statement or suggestion concerning the Arbitration Tribunal's award because Guang Dong has not come forward with any transcript or other properly authenticated and verified evidence establishing the manner in which the award was rendered by the Arbitration Tribunal at issue. D. Kan. R. 56.1(d).

15. Guang Dong filed this action on August 26, 2003 seeking an order confirming the foreign arbitral award. (See Complaint).

RESPONSE: UNCONTROVERTED.

## STATEMENT OF ADDITIONAL MATERIAL FACTS

A. THE "SALES CONTRACTS" WERE NOT VALID CONTRACTS

1. Guang Dong and ACI did not enter into any written contracts for the purchase of caps from Guang Dong between July 26, 2000 and January 9, 2001. Davis Affidavit, ¶¶ 5-16.

2. For approximately ten years, ACI was involved in a business relationship with China Pearl whereby ACI purchased hats from China Pearl for importation into the United States. *Id.* at ¶ 5.

3. As part of its business relationship with China Pearl, ACI issued purchase orders to China Pearl for the purchase of the hats. *Id.* at ¶ 6.

4. After receiving the purchase order from ACI, China Pearl entered into contracts with third-party manufacturers, including Guang Dong, to purchase the hats initially identified in ACI's purchase order to China Pearl. *Id.* at ¶¶ 7, 12, 13.

5. China Pearl was responsible for paying the third-party manufacturers it contracted with to fill ACI's order to China Pearl. *Id.* at ¶¶ 7, 11.

6. After the hats were manufactured in accordance with China Pearl's contract with the third-party manufacturer, the hats would be exported to the United States and China Pearl would then invoice ACI for payment of its purchase order. *Id.* at ¶ 9.

7. After receiving China Pearl's invoice, ACI would pay China Pearl and China Pearl would in turn pay the third-party manufacturer. *Id.* at ¶¶ 9-11.

8. Because ACI had a contractual relationship with China Pearl, ACI understood that the "sales contracts" forwarded to ACI by China Pearl were sent so that ACI could verify the type, price and quantities of the orders ACI had placed with China Pearl. *Id.* at ¶ 13.

9.  Even in the arbitration award attached to plaintiff's Motion for Summary Judgment as Exhibit 2 appears to recognize that ACI's contractual relationship was with China Pearl instead of Guang Dong.  Assuming for argument that the arbitration award is valid, under the section entitled "Facts of the Case," the purported English translation of the Chinese award specifically states:

> The claimant (*Guang Dong*) alleged:
>
> That the two parties to this case started international trade through China Pearl International Trade Co., Ltd. (hereinafter referred to as "the Pearl Company (sic.)) since 1992.  *All the purchase for goods in China by the respondent* (ACI) *are operated by the Pearl Company and all the expenses* including those incurred in the transportation of the goods, ORC fee, customs declaration fee and other miscellaneous expenses *are paid by the Pearl Company*.  The claimant is responsible for the manufacture of the products, the provision of the export documents and the certificate of quota of exported textiles.  *The channel for payment of goods is that the respondent* (ACI) *pays the money for the contracts to the account of the Pearl Company in See* Exhibit 2

10. The boilerplate, pre-printed language in the "sales contracts" recites price and payment terms, insurance provisions and a demand that the "buyer" provide the "seller" with a letter of credit.  *Id.* at ¶¶ 13-18.

11. ACI never sent a purchase order to Guang Dong for the hats identified in the 14 "sales contracts" attached as Exhibit 1 to Guang Dong's Motion for Summary Judgment.  *Id.* at ¶¶ 15, 21.

12. Guang Dong never sent an invoice to ACI for any of the hats identified in the 14 "sales contracts" attached as Exhibit 1 to Guang Dong's Motion for Summary Judgment.  *Id*. at ¶¶ 16, 21.

13. Although the pre-printed "sales contracts" contain blank spaces for "insurance" to be provided by the "seller," Guang Dong never filled in any of the blanks

or provided ACI with confirmation that it had obtained insurance for its shipments to ACI. *Id.* at ¶ 17.

14. Although the "sales contract" mandated that the "buyer" furnish a letter of credit, Guang Dong never requested a letter of credit from ACI. *Id.* at ¶ 18.

15. Prior to the arbitration, ACI received correspondence from collection representatives acting on behalf of Guang Dong seeking to collect on Guang Dong's behalf. In response to the inquiries from Guang Dong's collection representatives, ACI informed Guang Dong's representatives that ACI did not have any contractual relationship with Guang Dong. Instead of following up and explaining its contractual relationship with ACI, Guang Dong opted to file an arbitration action in Beijing, The People's Republic of China. *Id.* at 25.

16. Even though Guang Dong had a contractual relationship with China Pearl for payment for the hats identified in the "sales contracts" attached to plaintiff's Motion for Summary Judgment as <u>Exhibit 1</u>, Guang Dong never filed suit against China Pearl for payment of the amounts claimed to be due and owing by Guang Dong in conjunction with ACI's purchase orders to China Pearl. *Id.* at ¶ 27.

17. ACI did not participate in any arbitration proceeding with Guang Dong because ACI did not have any contract with Guang Dong prior to entering into the February 15, 2001 Joint Venture Agreement. *Id.* at 26.

B.  THE JOINT VENTURE AGREEMENT WAS ENTERED INTO AFTER THE "SALES CONTRACTS" AND DOES NOT CONTAIN AN ARBITRATION CLAUSE

18. On or about February 15, 2001, ACI and Guang Dong entered into a Joint Venture Agreement, Bank Assignment Agreement and Assignment of Proceeds which

provided that Guang Dong would manufacture products which were to be "exclusively distributed and sold through ACI" to a selected list of ACI's customers.  *Id.* at ¶ 19.

19. In exchange for Guang Dong's exclusive distribution agreement, ACI agreed to assign the proceeds of selected, future orders to Guang Dong from selected accounts, including Paramount Headwear, Inc.  *Id*.

20. The Joint Venture Agreement and supporting assignments (collectively "ACI's exclusive contract") did not contain any arbitration agreement providing for arbitration of disputes arising out of the exclusive contract.  *Id.* at ¶ 20.

21. Prior to entering into the exclusive contract with Guang Dong in mid-February 2001, ACI did not have any prior Joint Venture or other direct contractual agreement with Guang Dong.  *Id.* at ¶ 21.

22. After agreeing to exclusively manufacture headwear to be distributed through ACI in the United States – and after ACI identified the names, locations and contact information for some of its key customers – Guang Dong breached the Joint Venture Agreement by directly approaching at least one of ACI's customers (Paramount Headwear) to provide headwear directly to the ACI customer.  *Id.* at ¶ 23.

23. Assuming again for argument that the arbitration award attached to plaintiff's Motion for Summary Judgment is valid, in its version of the case Guang Dong even recognizes that, after canceling the contract between ACI, China Pearl and Guang Dong for shipment of product to Paramount Headwear (in accordance with the Joint Venture Agreement), "[o]n April 17, 2001, [Guang Dong] signed directly with the US client Paramount Company . . . "  <u>Exhibit 2</u> to plaintiff's Motion for Summary Judgment, p. 21.

24. ACI was damaged as a direct result of Guang Dong's failure and refusal to live up to its obligations under the exclusive contract. *Id.* at ¶ 24.

## LEGAL STANDARD

Summary judgment is proper under Rule 56(c) of the Federal Rules of Civil Procedure if the pleadings, affidavits, and other evidence show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. § 56(c); *Mayo v. Dillard's Dept. Stores, Inc.*, 884 F. Supp. 417, 419 (D. Kan. 1995). Summary judgment is not appropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677, 684 (10th Cir. 1991). Moreover, all reasonable inferences from the evidence must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505 (1986).

## ARGUMENT

A. THE ARBITRATION PROVISIONS IN THE "SALES CONTRACTS" ARE NOT CAPABLE OF BEING ENFORCED AND ARE CONTRARY TO AMERICAN LAW

The arbitration agreements contained in the so-called "sales contracts" are not capable of settlement by arbitration under U.S. law and are contrary to public policy because ACI never actually entered into a valid contract for the purchase of goods from Guang Dong. Instead, the 14 "sales contracts" signed by ACI constituted nothing more than verifications of the orders placed and purchases made by third-party China Pearl with Guang Dong. Guang Dong's request to enforce an arbitration award must therefore fail due to the lack of valid consideration. 9 U.S.C. § 201, Art. V, sub. 2(b), as applied in 9 U.S.C. § 207.

For approximately ten years, up through and including January 9, 2001, ACI contracted with China Pearl for the manufacture and import of uniform caps distributed by ACI to businesses in the United States.  ACI sent purchase orders to China Pearl and received invoices from China Pearl for each cap order it placed.  After receiving the finished product, ACI would pay China Pearl for the goods received.

After forwarding its order to China Pearl, ACI understood that China Pearl would contract with third-party manufacturers to actually make the requested product.  One such third-party manufacturer was Guang Dong.

After receiving the purchase order from China Pearl, Guang Dong forwarded a "sales contract" to ACI to confirm the specifics (e.g., quantity, price, style) of the order. Because ACI's contractual obligations for payment ran directly to China Pearl – and because China Pearl maintained the obligation to pay Guang Dong – ACI never construed the "sales contracts" as establishing a contractual obligation to make direct payment to Guang Dong.

Despite never receiving a purchase order from ACI and despite never remitting a single invoice to ACI, Guang Dong filed a claim for arbitration and now comes to the Court arguing that, under the "sales contracts," ACI had an obligation to pay Guang Dong for goods ordered by China Pearl.  Respectfully, Guang Dong's contention that ACI had a contractual obligation to pay Guang Dong is not even borne out by the language of the default arbitration award attached to plaintiff's motion.  *See* Statement of Additional Material Facts at ¶ 9 (above).

Guang Dong's attempt to unilaterally enforce the arbitration provision in the "sales contracts" is rendered even more puzzling by the fact that Guang Dong neither

filled in, nor sought to enforce, other pre-printed, boilerplate provisions contained in the alleged "sales contracts."[1]

Because ACI and Guang Dong never entered into a valid contract for the purchase of goods, the arbitration agreement is unenforceable. Instead of supplying additional consideration for ACI's earlier order to China Pearl, the "sales contracts" sent to ACI merely reiterated the terms of earlier order. Due to a complete lack of consideration, this Court must disregard Guang Dong's attempt to construct purchase agreements out of simple confirmations.

As evidenced by the actual transactions which took place between ACI and China Pearl and China Pearl and Guang Dong, and as even acknowledged in the Chinese arbitration award, ACI had no contractual obligation to pay Guang Dong for goods ordered by China Pearl. Nevertheless, by asking the Arbitration Tribunal to enforce China Pearl's obligations against ACI, Guang Dong has attempted to subvert general tenets of contract law.

In the United States, "[i]t goes without saying that a contract cannot bind a nonparty." *Equal Employment Opportunity Comm'n v. Waffle House, Inc.,* 122 S.Ct. 754, 764 (2001). By using the so-called "sales contracts" and a default arbitration award to hold ACI responsible for China Pearl's contractual responsibilities, Guang Dong has asked for a remedy against ACI that is incapable of settlement by arbitration and is contrary to public policy. This Court must therefore reject Guang Dong's claim for arbitration.

---

[1] *See e.g.,* the provision entitled "Insurance" and the requirement that the "buyer" post a letter of credit. Statement of Additional Material Facts, ¶¶ 13-14.

B.  THE ARBITRATION AWARD MUST FAIL BECAUSE IT IS BASED ON MATTERS OUTSIDE THE SCOPE OF THE ARBITRATION AGREEMENT

Assuming solely for argument that the "sales contracts" constituted a valid contract supported by mutual consideration, Guang Dong's attempt to enforce the arbitration award must fail because the issue of payment for goods manufactured by Guang Dong was outside the scope of the parties' arbitration agreement.  9 U.S.C. § 201, Art. V, sub. (1)(c), as applied in 9 U.S.C. § 207.

Article V, sub-section (1)(c) of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards provides:

> 1.  Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . .

(2004 edition); *see also Polytek Engineering Co., Ltd. v. Jacobson Companies*, 984 F.Supp. 1238, 1242 (D. Minn. 1997) (one of the elements of a foreign arbitration award that may be successfully challenged is whether "the award concerned an issue which did not fall within the arbitration agreement").

The "sales contracts" specifically state:

> All disputes arising from the execution of, or in connection with this contract shall be settled amicably through friendly negotiation.  In case no settlement can be reached through negotiation, the case shall then be submitted to the Foreign Economic & Trade Arbitration Commission of the China Council for the promotion of International Trade, Beijing for arbitration in accordance with its provisional rules of procedure.

*See* Exhibit 1 to plaintiff's Motion for Summary Judgment, p. 3.

As established above, China Pearl, and not ACI, maintained the contractual burden and responsibility to pay Guang Dong for the goods it manufactured. Consequently, even if the arbitration agreement was binding and enforceable, ACI could not possibly have envisioned that Guang Dong could file an arbitration claim seeking to foist China Pearl's contractual obligations upon ACI under the language of the arbitration agreement in the parties' "sales contracts." This Court should therefore overrule plaintiff's Motion for Summary Judgment because an arbitration over payment could not have been within the scope of the arbitration agreement.

C.   ACI'S COUNTER CLAIM IS NOT BARRED BY RES JUDICATA

ACI has filed a counter claim alleging that Guang Dong breached its February 15, 2001 Joint Venture Agreement with ACI and its implied obligation of good faith and fair dealing by ignoring the terms of the parties' exclusive agreement and attempting to contract directly with ACI's customers. None of the issues raised by ACI in its counter claim relate to the 14 "sales contracts" at issue in the arbitration. In addition, because the Joint Venture Agreement was entered into *after* the 14 "sales contracts" and did not contain any arbitration agreement, ACI's claim is not barred by the doctrine of *res judicata.*

In *Gratzer v. Yellow Corp.*, 316 F.Supp.2d 1099, 1103 (D. Kan. 2004), the district court specifically recognized that "[a] party can be made to arbitrate only those disputes which they have agreed to submit to arbitration." In the present case, ACI and Guang Dong never agreed to submit disputes arising out of their Joint Venture Agreement to arbitration. In fact, their written contract contains no arbitration provision whatsoever.

CONCLUSION

- 15 -

Guang Dong seeks to enforce an arbitration award which bears no relationship with the actual contractual relationships between ACI and China Pearl and China Pearl and Guang Dong, respectively, for the purchase and manufacture of uniform caps. Because the subject matter of Guang Dong's claim against ACI for payment of China Pearl's contractual obligations is not capable of settlement by arbitration and is contrary to the public policy of the United States, Guang Dong's Motion for Summary Judgment should be overruled.

Even assuming solely for argument that Guang Dong could establish a valid arbitration agreement with ACI, this Court should reject enforcement of the arbitration award because it seeks to resolve a subject which could not possibly have been within the scope of ACI and Guang Dong's agreement: the payment of money for goods ordered by China Pearl. Finally, Guang Dong's claim that ACI's counter claim is barred by the *res judicata* ignores the fact that ACI's counter claim bears no relationship with the 14 "sales contracts" which were at issue in the Chinese arbitration.

Because Guang Dong failed to establish the absence of a genuine issue of material fact on either its claim or ACI's counter claim, summary judgment is not appropriate.

      Respectfully submitted,

      LATHROP & GAGE L.C.

      By:  /s/ Patrick N. Fanning
        Jean Paul Bradshaw II KS# 70010
        Patrick N. Fanning KS# 19015
        2345 Grand Boulevard, Ste. 2800
        Kansas City, Missouri 64108-2684
        (816) 292-2000/FAX: (816) 292-2001
        e-mail: Jbradshaw@lathropgage.com
        e-mail: pfanning@lathropgage.com

      ATTORNEYS FOR DEFENDANT ACI INTERNATIONAL, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was served, via electronic filing, on the following counsel of record this 21st day of September, 2004:

Timothy J. Pringle
Eschmann & Pringle, P.A.
3706 SW Topeka Blvd. Suite 202
Topeka, KS  66609

      /s/ Patrick N. Fanning
      An Attorney for Defendant

CC 1326948v2