ams/kp

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

Guang Dong Light Headgear )
Factory Co., Ltd., )
                    )
               Plaintiff, )
                    )
     vs. )       Case No. 03-4165-JAR
                    )
ACI International, Inc., )
                    )
              Defendant. )
_____)

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Court now considers Plaintiff's Motion for Summary Judgment. (Doc.18). Plaintiff Guang Dong Light Headgear Factory Co., Ltd. (Guang Dong) asks this Court to affirm and enforce a foreign arbitration award by the China International Economic and Trade Arbitration Commission (CIETAC) that was entered against Defendant ACI International, Inc. (ACI) on May 28, 2002. Guang Dong also asks the Court to dismiss ACI's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing and its request for equitable set-off. After ACI filed a response and Guang Dong filed a reply, the Court granted ACI leave to amend its response by changing a sentence in paragraph eight of its Statement of Additional Facts to indicate that ACI had a relationship with China Pearl International Trade Co., Ltd. (China Pearl) rather than Guang Dong as stated in the original document.[1] Guang Dong then filed a supplemental reply to the amended response.

_____

[1] The Court will consider only the arguments presented in the amended response.

Guang Dong moves for summary judgment, on the basis that this Court should confirm the foreign arbitration award and that ACI's counterclaims are either barred by res judicata or should be submitted to arbitration.  ACI responds that it: (1) did not have a contractual relationship with Guang Dong that included an agreement to arbitrate; (2) was not afforded proper notice of the arbitration; and (3) was it represented at the arbitration.  ACI also argues that the foreign arbitral award has no preclusive effect on its counterclaims.

The Court denies plaintiff's motion for summary judgment because there are genuine issues of material fact concerning whether: (1)  the parties ever had a direct contractual relationship with each other that included an agreement to arbitrate; and (2) ACI received adequate notice of the arbitration proceedings.  The Court also denies summary judgment on ACI's counterclaims as they are based on an entirely separate transaction from the contracts at issue in the arbitration proceedings.

## I.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2]  A fact is only material under this standard if a dispute over it would effect the outcome of the suit.[3]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[4]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party

---

[2] Fed. R. Civ. P. 56(c).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Id.*

must prevail as a matter of law."[5]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[6] "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[7] The burden may be met by showing that there is no evidence to support the nonmoving party's case.[8] If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set for specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9] When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[10]

## II.  Factual Background

Guang Dong, a cap manufacturer, is organized under the laws of the People's Republic of China with its principal place of business in Tangyong, Xinshi, Guangxhou China.  ACI is organized under the laws of the state of Kansas with its principal place of business in Olathe, Kansas.  ACI is in the business of securing the production and importation of custom-made caps worn by American

---

[5] *Id.* at 251-52.

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[8] *Id.*

[9] *Id.*

[10] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

workers.  For approximately ten years, ACI had a business relationship with China Pearl, which in turn,

contracted with other companies, including Guang Dong, to manufacture caps and ship them to the

United States.

From July 26, 2000 to January 9, 2001, fourteen documents, each entitled "Sales Contract,"

(Sales Contracts) passed between Guang Dong and ACI.  These documents appear to be identical

form contracts, that list ACI as the buyer and Guang Dong as the seller.  They each include an

arbitration clause that states:

> All disputes arising from the execution of, or in connection with this
> contract shall be settled amicably through friendly negotiation.  In case
> no settlement can be reached through negotiation, the case shall then be
> submitted to the Foreign Economic and Trade Arbitration Commission
> of the China Council for the Promotion of International Trade, Beijing[11]
> for arbitration in accordance with its provisional rules of procedure.
> The arbitral award is final and binding upon both parties.

The Sales Contracts provided that payment be made within ninety days after shipment.  ACI President

Chris Davis and a representative from Guang Dong signed each of the Sales Contracts.  A stamp

appears next to each of the signature lines, as well.[12]

### Joint Venture Agreement

Guang Dong and ACI **negotiated** a Joint Venture, Bank Assignment, and Assignment of

---

[11]  This body is the same entity as the China International Economic and Trade Arbitration Commission or
CIETAC.  CIETAC was established in 1954 and renamed "Foreign Economic and Trade Arbitration Commission" in
1980.  It was renamed again CIETAC in 1998.  *See* Juris International, Dispute Resolution Centres, The China Int'l
Economic & Trade Arbitration Comm'n, *at* http://www.jurisint.org/pub/03/en/doc/20.htm (Nov. 2, 2002) (providing a
profile of CIETAC).

[12]  One of the fourteen documents does not include a signature on the "Buyer" signature line, although it
does contain a stamp.  (Ex. 1, at 16.)

4

Proceeds agreement (Joint Venture agreement) in mid-February 2001.  The Joint Venture agreement, as drafted, required Guang Dong to manufacture products for exclusive distribution by ACI to select ACI customers in exchange for ACI's agreement to assign proceeds of certain future orders to Guang Dong from selected accounts, including that of ACI customer, Paramount Headwear, Inc. (Paramount). Guang Dong did not submit a draft of this agreement to the Court; however, ACI submitted an unsigned draft of a Joint Venture agreement, which made no provision for arbitration in case of a dispute.  ACI also submitted email correspondence between Chris Davis and a representative of China Pearl suggesting that Guang Dong had accepted "the agreement" and requesting that all parties sign and stamp the agreement.  On April 17, 2001, Guang Dong contracted directly with Paramount to supply it with headgear.

### *Demand for Payment and Arbitration*

In June 2001, ACI received two letters from a collection agency and Topeka law firm demanding payment on the fourteen Sales Contracts to the People's Insurance Company of China. Counsel for ACI responded that they disputed the amount claimed to be owed under these Sales Contracts.

Guang Dong filed an application for arbitration with CIETAC on December 4, 2001, claiming that ACI had failed to pay under the fourteen Sales Contracts.  CIETAC accepted the case and sent documents to ACI as notice of the arbitration hearing.  The notarized documents in the record include certificates of translation and are accompanied by an affidavit from the CIETAC secretary that the documents were sent and received by ACI.  ACI did not attend the arbitration hearing, as **it did not believe** that it had a contractual relationship with Guang Dong.  An attorney-in-fact was appointed to

represent ACI, and an arbitration panel heard the case by default.  ACI did not provide any statement to the arbitration panel during or after the hearing.  Guang Dong requested an award of $205,280.77 under the fourteen Sales Contracts for payments in arrears plus $12,109.73 in interest on that amount. This request subsumed a previous ACI payment of $9,900 and a customs clearance fee of $29,700, which Guang Dong previously owed to ACI.

The arbitration panel's May 28, 2002 award found that Guang Dong satisfied its obligation for delivery of goods under the fourteen documents entitled "Sales Contract."  It also determined that ACI violated articles 25 and 53 of the United Nations Convention on Contracts for the International Sales of Goods and would bear the liabilities for breach of contract.  The panel's decision awarded Guang Dong $205,280.77 in addition to $12,109.73 in interest.[13]  The decision also ordered ACI to pay an arbitration fee of RMB 73,973.00.[14]  Guang Dong filed this action on August 2, 2003 to confirm the foreign arbitral award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention) and 9 U.S.C. § 207.

## III. Discussion

### A.  Jurisdiction under the New York Convention

This is an action to confirm an arbitral award granted in China to a Chinese corporation against a United States corporation pursuant to the New York Convention.[15]  The New York Convention is a

---

[13] Interest was calculated at the annual interest rates of 7.875% and 6.8125% on the basis of the respective amount on the  "Sales Contracts" as of November 30, 2001.

[14] The Court presumes RMB indicates China Yuan Renminbi, Chinese currency.  According to a conversion performed by the Court on May 10, 2005, 73,973.00 RMB equates to $8937.50 USD.

[15] 9 U.S.C. § 201 note [hereinafter New York Convention].

multilateral treaty that governs foreign arbitral awards.[16]  The United States acceded to the New York

Convention on December 29, 1970.[17]  China acceded to the treaty on January 22, 1987.[18]  "The

purpose of the New York Convention, and of the United States' accession to the convention, is to

encourage the recognition and enforcement of international arbitral awards, to relieve congestion in the

courts and to provide parties with an alternative method for dispute resolution that [is] speedier and less

costly than litigation."[19]  The Convention is enforced through Article 2 of the Federal Arbitration Act

(FAA), which incorporated it into federal law.[20]  The FAA provides for original subject-matter

jurisdiction by the federal district courts over any action falling under the Convention.[21]  The Act further

provides:

> Within three years after an arbitral award falling under the Convention is
> made, any party to the arbitration may apply to any court having
> jurisdiction under this chapter for an order confirming the award as
> against any other party to the arbitration.  The court shall confirm the
> award unless it finds one of the grounds for refusal or deferral of
> recognition or enforcement of the award specified in said Convention.[22]

---

[16] *See generally Energoinvest DD v. Democratic Republic of Congo*, 355 F. Supp. 2d 9, 11 (D.D.C. 2004);
Karamanian, Susan, *The Road to the Tribunal & Beyond: Int'l Commercial Arbitration & the United States Courts*,
34 GEO. WASH. L. REV. 17, 29-33 (2002).

[17] New York Convention, n.29.

[18] *Id.* n.5a.

[19] *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998)
(quotations omitted), *cert. denied sub. nom.*, *Nitram, Inc. v. M.A.N. Gutehoffnungshutte GmbH*, 525 U.S. 1068 (1999).

[20] 9 U.S.C. §§ 201-208.

[21] *Id.* § 203.

[22] *Id.* § 207.

Guang Dong relies on this provision of the Act in moving for summary judgment to effectively confirm the Chinese arbitration award.  Guang Dong further moves for summary judgment on ACI's counterclaims because they are either barred by the doctrine of res judicata or should be determined through arbitration.

As the party seeking confirmation of the arbitration award, Guang Dong bears the burden of proof with regard to subject matter jurisdiction.[23]  The Court must consult the language of the Convention to determine whether it has jurisdiction.[24]  The Convention imposes certain conditions upon the jurisdiction of a district court in a confirmation action.[25]  It makes clear that the party applying for confirmation must supply the court with: (1) an authenticated original or a duly certified copy of the arbitration award; (2) the original or duly certified copy of the original agreement between the parties; and (3) a certified translation of any documents that are not made in "the official language of the country in which the award is relied upon."[26]  The translation should be certified by a "by an official or sworn translator or by a diplomatic or consular agent."[27]

## 1. Sales Contracts

---

[23]  *See, e.g.*, *Czarina ex rel. Halvanon Ins. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1291 (11th Cir. 2004); *First State Ins. Co. v. Banco de Seguros Del Estado*, 254 F.3d 354, 357 (1st Cir. 2001).

[24]  *Id.* (citing *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 215 (2d Cir. 1999); *Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669 (5th Cir. 1994)).

[25]  *See* New York Convention, arts. III-IV.

[26]  *Id.* art. IV.

[27]  New York Convention, art. IV(2).

Guang Dong submitted certified copies of the arbitration award and of the Sales Contracts that contain the agreements to arbitrate.  Along with these documents, Guang Dong submitted certified translations.  ACI asserts that the attached arbitration award is an "unauthenticated and unverified English translation."  The Court disagrees.  Guang Dong submitted all of the requisite documentation for the dispute surrounding the fourteen Sales Contracts with its summary judgment motion.  With the arbitration award, Guang Dong submitted a General Authentication Certificate, signed by a consular officer (Doc. 19, at 1), a notarized Certification that the copies of the award are true and correct (Doc. 19, at 3), a Certification of Translation for the arbitration award and Certification of Award (Doc. 19, at 4).  Guang Dong submitted a copy of the award in its native language, as well as the English translation.  The English translation of the award also contains a stamp reading "Certified Translation" on each page.  The Court finds that Guang Dong has met the jurisdictional prerequisites to a confirmation action under the statute.  ACI provides no specific reason why the previously mentioned signed and sealed certified documents should not be relied upon.

### 2. Joint Venture Agreement

However, the Court finds that Guang Dong has not provided the Court with any documentation of the Joint Venture agreement that it claims is also subject to the arbitration panel's findings.  The only submission of this agreement is an unsigned draft of the agreement made by ACI, which does not include an agreement to arbitrate.  Guang Dong's interpretation of the requirement here would render the article IV of the Convention superfluous, as an agreement to arbitrate would be unnecessary so long

as an arbitration tribunal determined that the parties executed a valid agreement to arbitrate.[28]  Although the Court acknowledges that the Joint Venture agreement is discussed in the arbitration award, the Court is without jurisdiction to confirm the award to the extent that it adjudicates the meaning of any Joint Venture agreement,[29] as Guang Dong fails to meet the jurisdictional prerequisites for confirmation.[30]

Guang Dong apparently contends that ACI's counterclaims are rooted in the Sales Contracts. ACI maintains that it entered into a distinct contract with Guang Dong on or about February 15, 2001, that provided for Guang Dong to manufacture products to be sold exclusively through ACI to specific customers.  ACI's counterclaims are based on its contention that Guang Dong breached this Joint Venture agreement by directly approaching at least one of the specific customers–Paramount–identified in that agreement.  Therefore, this Court lacks subject matter jurisdiction to confirm the arbitration award to the extent that it is claimed to adjudicate the rights and obligations of the parties under any Joint Venture agreement that may have existed.  The Court will only consider whether it may confirm the award as it adjudicates the rights and obligations of the parties under the fourteen Sales Contracts. The Court will consider Guang Dong's remaining arguments on the counterclaims in Part III.C, *infra*.

**B.  *Confirmation of the Award***

---

[28]  *See China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 283 (3d Cir. 2003) (Alito, J., concurring) ("Minmetals's position would make the Convention's requirement that the party seeking enforcement submit the original agreement a meaningless formality.").

[29]  The Arbitration Award refers to this contract as "No. 21RQK041."

[30]  As discussed *infra*, Guang Dong takes the position that there was no valid Joint Venture agreement between the parties.

One appeals court has summarized the burden-shifting framework under the Convention as follows:

> Once the proponent of the award meets his article IV jurisdictional burden of providing a certified copy of the award and the arbitration agreement, he establishes a prima facie case for confirmation of the award. . . . That is, the award is presumed to be confirmable. The defendant to the confirmation action can overcome this presumption only by making one of the showings enumerated in the Convention.[31]

As such, this Court's power is limited to determining whether the Chinese award may be enforced in the United States.[32]

Under the New York Convention, the Court may refuse to enforce an arbitral award only under the specific grounds set forth in article V.[33]  Article V provides the following five grounds of refusal to recognize and enforce an arbitral award: (1) the parties to the agreement were under some incapacity or the agreement is not valid under the laws the parties have subjected it to; (2) the party against whom the award was invoked did not receive proper notice; (3) the award contains decisions on matters outside the scope of the arbitration agreement; (4) the composition of the arbitral authority was not in line with the agreement of the parties or was not in line with the law under which the award was made; and (5) the award is not binding on the parties, or it has been set aside by a competent

---

[31] *Czarina,* 358 F.3d at 1292 n.3 (citations omitted).

[32] *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak*, 364 F.3d 274, 287 (5th Cir. 2004); *see* 9 U.S.C. § 207.

[33] 9 U.S.C. § 207; New York Convention, art. V; *see, e.g., Encyclopaedia Unversalis S.A. v. Encyclopaedia Britannica, Inc.*, __F.3d __, No. 04-0288, 2005 WL 730080, at *3 (2d Cir. Mar. 31, 2005).

11

authority in the country where the award was made.[34]

In addition, refusal may be appropriate if the authority in the country where confirmation is sought finds that: (1) the subject matter of the difference is not capable of settlement by arbitration under the law of that country; or (2) confirming the award would be contrary to the public policy of that country.[35]  ACI bears the burden of proving that the Court should refuse to enforce the award under one of these grounds.[36]  "The burden is a heavy one, as 'the showing required to avoid summary confirmance is high.' . . . Given the strong public policy in favor of international arbitration, review of arbitral awards under the New York Convention 'is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'"[37]

ACI argues that the following grounds support refusal to confirm the award: (1) ACI was not accorded proper notice of the arbitration proceedings; (2) the award is based on matters outside the arbitration agreement; (3) enforcing the award would be contrary to public policy; and (4) no valid agreement to arbitrate existed between the parties.  The disputed facts in this case center on whether or not ACI and Guang Dong had a contractual relationship that included an agreement to arbitrate, ACI's fourth argument.  ACI maintains that no contractual relationship existed between the parties, barring enforcement of the foreign arbitration award.  ACI claims that it had a contractual relationship only with

---

[34]  New York Convention, art. V.

[35]  *Id.*

[36]  *Encyclopaedia Britannica*, 2005 WL 730080, at *3; *Karaha Bodas Co.*, 364 F.3d at 288; *Czarina*, 358 F.3d at 1292-93 n.3.

[37]  *Encyclopaedia Britannica*, 2005 WL 730080, at *3 (citations omitted) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997), *cert. denied*, 522 U.S. 1111 (1998)).

China Pearl, which in turn owed Guang Dong payment for the goods it delivered to ACI. Guang Dong argues that the parties did enter into a series of contracts for the sale of goods, and each contract included an agreement to arbitrate. Thus, Guang Dong argues that this Court lacks authority to question the judgment of the Chinese arbitration panel, as only that panel may determine whether there was a contract subject to arbitration. This central dispute between the parties also forms the basis of ACI's second and third challenges to confirmation. The Court will first address the issue of the existence of a contract between the parties before discussing whether ACI was accorded proper notice. Later, the Court must also address the effect of the arbitral award on ACI's counterclaims.

### 1. The Existence of a Contractual Relationship

The primary issue in this case concerns the legal significance of the fourteen Sales Contracts, all of which contain identical arbitration clauses. Initially, the Court must consider the extent of its power to review the decision of the Chinese arbitration panel. Guang Dong relies on the arbitration panel's determination as conclusive. The arbitration panel determined that based on the fourteen Sales Contracts, the parties had a direct contractual relationship that was breached by ACI, and that ACI owes Guang Dong money under this series of contracts for goods received. Whether the Court may review this finding is a complicated question of unsettled law.

A party objecting to confirmation under the Convention is restricted to objections on the specific grounds enumerated in article V.[38] Confirmation of an award under the Convention has been

---

[38] *See, e.g.*, *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 283 (3d Cir. 2003); *Baxter Int'l, Inc. v. Abbott Labs*, 315 F.3d 829, 831(7th Cir. 2003) ("Courts thus do not sit to hear claims of factual or legal error by an arbitrator"); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997), *cert. denied*, 522 U.S. 1111 (1998).

described as a "summary procedure."[39]  Here, ACI makes the overarching argument that it did not

enter into any contract with Guang Dong, and therefore, CIETAC lacked jurisdiction to render its

award.  This argument does not fit neatly within any of the enumerated grounds listed in article V of the

Convention.  Consequently, the Court must determine if it may even consider the issue.[40]  The Court

was unable to locate a Tenth Circuit decision reviewing confirmation of a foreign arbitral award under

the Convention.[41]  The Court found only one appellate decision that considered whether a court, in

*confirming and enforcing* an award under the Convention may review the question of contract

validity.[42]

     In *China Minmetals Materials Import & Export Co. v. Chi Mei Corp.*, the Third Circuit

considered "the district court's role, if any, in reviewing the foreign arbitral panel's finding that there was

a valid agreement to arbitrate."[43]  The court began its analysis of the issue by noting that the domestic

FAA applies to actions brought under the Convention, to the extent that the provisions do not conflict.[44]

It then determined that certain case law interpreting the domestic FAA may apply to cases brought

---

[39] *See Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 23; *Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 335 (5th Cir. 1976) ("To advance the objectives the implementing legislation prescribed a summary procedure in the nature of federal motion practice to expedite petitions for confirmations of foreign arbitral awards.").

[40] *See Baxter*, 315 F.3d at 831.

[41] *See Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953 (10th Cir. 1992), *cert. denied*, 506 U.S. 1021 (1992) (reviewing a motion to compel arbitration); *see also Malarky Enters., Inc. v. Healthcare Tech., Ltd.*, 153 F.3d 727 (table), No. 97-3151, 1998 WL 438691 (10th Cir. July 15, 1998) (reviewing a motion to dismiss based on an arbitration clause).

[42] *China Minmetals*, 334 F.3d at 274.

[43] *Id.* at 279; *see also Czarina*, 358 F.3d at 1293.

[44] *China Minmetals*, 334 F.3d at 279 (citing 9 U.S.C. § 208).

14

under the Convention.  Specifically, it examined case law holding that a district court may refuse to compel arbitration if it independently determines that the underlying contract is void *ab initio*.[45]

In *First Options of Chicago, Inc. v. Kaplan*, the Supreme Court reiterated that "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes–but only those disputes–that the parties have agreed to submit to arbitration."[46]  Therefore, if the parties did not explicitly agree to arbitrate the issue of arbitrability, then the court should decide that question independently.[47]  In addition, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."[48]  The court in *China Minmetals* interpreted *First Options* as follows:

> [U]nder the rule of *First Options*, a party that opposes enforcement of a foreign arbitration award under the Convention on the grounds that the alleged agreement containing the arbitration clause on which the arbitral panel rested its jurisdiction was void *ab initio* is entitled to present evidence of such invalidity to the district court, which must make an independent determination of the agreement's validity and therefore the arbitrability of the dispute, at least in the absence of a waiver precluding the defense.[49]

The Third Circuit applied this principle to its facts upon review of a motion to confirm an international arbitral award, as opposed to review of a motion to compel arbitration.  Likewise, this

---

[45]  *Id.* at 281-86 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995); *Gen. Elec.Co. v. Deutz*, 270 F.3d 144, 152-56 (2001); *Sandvik v. Advent Int'l Corp.*, 220 F.3d 99, 104-07 (3d Cir. 2000)).

[46]  514 U.S. at 943 (citing *AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)).

[47]  *Id.*; *accord Cogswell v. Merrill Lynch, Pierce, Fenner & Smith*, 78 F.3d 474, 478 (10th Cir. 1996).

[48]  *Id.* at 944.

[49]  *China Minmetals*, 334 F.3d at 289.

Court finds that it should determine the arbitrability of this dispute in the absence of unmistakable contract language stating otherwise.[50]  Because the parties did not provide for the arbitrator to determine the question of arbitrability, under the rule in *First Options*, the Court must determine the issue, and therefore whether the contracts were valid at their inception.[51]

There is some tension between the rule announced in *First Options* and the holding of another Supreme Court case, *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*[52]  In *Prima Paint*, the Court held that a claim of fraud in the inducement that goes to the validity of the entire contract should be decided by the arbitrator.[53]  The court should only decide the issue if the defense goes to the arbitration clause alone.[54]  In *Spahr v. Secco*,[55] the Tenth Circuit considered how *Prima Paint* should apply to a mental capacity defense.  The court found that *Prima Paint* did not extend to that defense, stating: "the analytical formula developed in *Prima Paint* cannot be applied with precision when a party contends that an entire contract containing an arbitration provision is unenforceable

---

[50]  Guang Dong did not advance the argument that ACI waived its right to challenge the arbitrators decision on these grounds.  *See Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1171 n.5 (11th Cir. 2004) (discussing waiver).

[51]  *See Czarina*, 358 F.3d at 1293 ("under United States and international law, a court asked to confirm an award should review an arbitration panel's conclusion that the parties agreed to arbitrate, unless the parties have agreed to submit this question to the arbitration panel."); *c.f. Malarky Enters., Inc. v. Healthcare Tech., Ltd.*, 153 F.3d 727 (table), No. 97-3151, 1998 WL 438691 (10th Cir. July 15, 1998) (explaining in dicta that "if there was no agreement, there would be nothing to arbitrate, and the question of whether there was, or was not, an agreement would be decided in Kansas courts.").

[52]  388 U.S. 395 (1967); *see, e.g., Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003).

[53]  *Id.* at 403-04.

[54]  *Id.*

[55]  330 F.3d 1266, 1272 (10th Cir. 2003).

16

because he or she lacked the mental capacity to enter into the contract."[56]  Because the defense went to both the enforceability of the entire contract and the specific arbitration provision, it placed the "making" of the agreement to arbitrate into question.[57]

Because this Court finds that the facts and issues of *China Minmetals* are substantially similar to the facts and issues of this case, the Court will follow that precedent and hold that this Court should make an independent determination of the Sales Contracts' validity, and therefore the arbitrability of this dispute.  This independent determination is necessitated by ACI's defense, that there was no meeting of minds to form the series of contracts, which of course goes to both the contracts generally, and the arbitration provisions within those contracts.   For "where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute."[58]   But the Court is unable to grant summary judgment on the issue, as the current record reflects a genuine issue of material fact, whether the parties reached an agreement.  Guang Dong relies on the signed Sales Contracts; ACI relies on the affidavit of Chris Davis attesting that these Sales Contracts were mere confirmations of orders placed through intermediary China Pearl.   Because this issue implicates most of ACI's objections to confirmation of the arbitral award, the Court will proceed

---

[56]  *Id.* at 1273.

[57]  *Id.*  Some courts focus on the distinction between void and voidable contracts.  Those courts have held that issues surrounding whether a contract is voidable fall within the *Prima Paint* holding, while courts should decide whether a contract is void.  *See, e.g., Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 589-92 (7th Cir. 2001); *Sandvik v. Advent Int'l Corp.*, 220 F.3d 99, 105-06 (3d Cir. 2000); *Weis Builders, Inc. v. Kay S. Brown Living Trust*, 236 F. Supp. 2d 1197, 1203-04 (D. Colo. 2002), *aff'd*, No. 02-1554, 2004 WL 516779 (10th Cir. Mar. 17, 2004).  *But see Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 627-29 (6th Cir. 2003); *Spahr*, 330 F.3d 1272 n.7, 1273 (declining to decide based on void/voidable distinction because the mental capacity defense cannot logically be targeted at a specific provision, but only the entire contract).

[58]  *Will-Drill Res., Inc.*, 352 F.3d at 219.

only to address the notice objection and whether ACI may assert its counterclaims in this Court.

### 2.  Notice

Along with the jurisdictional documentation required under the Convention, Guang Dong

submitted documentation of its attempts to provide notice to ACI of the various stages of the arbitration

proceeding.   Although ACI does not deny that it received such notice, it deems such notice insufficient,

and notes that "Guang Dong has not introduced any credible evidence establishing that ACI was

properly and formally 'served' with the Arbitration Notice, the Application for Arbitration and its

annexes filed by the Plaintiff as well as the Arbitration Rules of the Arbitration Commission and the List

of Arbitrators on December 7, 2001."

As stated in the preceding section, one of the enumerated grounds for refusing to confirm an

arbitral award under the New York Convention is: "The party against whom the award is invoked was

not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was

otherwise unable to present his case."[59]  This provision has been interpreted to condone application of

the forum state's due process standards.[60]  "An elementary and fundamental requirement of due

process in any proceeding which is to be afforded finality is notice reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections . . . and it must afford a reasonable time for those interested to

---

[59]  New York Convention, art. V(1)(b).

[60]  *See, e.g., Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1130 (7th Cir. 1997); *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du papier (RAKTA)*, 508 F.2d 969, 975 (2d Cir. 1974).

make their appearance."[61]   There is a well-settled legal presumption that materials mailed are actually received by the intended party when there is proof that routine office procedures were followed when the notice was prepared and mailed.[62]

Here, Guang Dong submitted the following documentation to establish it accorded ACI with notice of the CIETAC arbitration proceeding: (1) an affidavit (with a translated copy of the notarization) from the Secretary of CIETAC stating that it provided ACI with notice of the arbitration proceeding and that it received a signed return receipt indicating that ACI received this notice; (2) two notices dated January 15, 2002, addressed to ACI, that inform the addressee that CIETAC set an oral hearing on the matter for February 28, 2002 in Beijing and that provided notice of the formation of an arbitration tribunal; and (3) a return receipt showing that a mailing was received by ACI on January 21, 2002 from Sinotrans Express.

The Court finds that there is a genuine issue of material fact as to whether ACI received adequate notice in this case.  Neither party provides this Court with arguments concerning the issue; instead, they make only conclusory allegations.  Although there is documentation in the record that Guang Dong provided ACI with notice of the hearing, the Court is unable to locate the December 7, 2001 notice referenced by Guang Dong in its brief, that "served the Defendant by EMS . . . the Arbitration Notice, the Application for Arbitration and its annexes filed by the Plaintiff as well as the Arbitration Rules of the Arbitration Commission and the List of Arbitrators and requested the

---

[61] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted).

[62] *See, e.g.*, *Sorrentino v. I.R.S.*, 383 F.3d 1187, 1189 (10th Cir. 2004); *Scofield v. Telecable of Overland Park, Inc.*, 751 F. Supp. 1499, 1519 (D. Kan. 1990), *rev'd on other grounds*, 973 F.2d 874 (10th Cir. 1992).

Defendant to select arbitrators and submit its statement of defense in time."[63]  Even if the Court concludes that ACI was provided with notice of the proceeding itself, there is a genuine issue of material fact with regard to notice of the appointment of the arbitrator, and whether ACI was provided a reasonable opportunity to present its case.

## C. ACI's Counterclaims

Guang Dong argues that the doctrine of res judicata bars ACI from asserting  counterclaims that relate to the purported Joint Venture agreement.  Alternatively, Guang Dong contends that the Court should compel arbitration of those claims under the Convention.  ACI contends that the counterclaims relate solely to the Joint Venture agreement, which did not include an arbitration provision; and the counterclaims do not relate to the fourteen Sales Contracts that were the subject of the arbitral award.

Initially, the Court notes that the existence of a Joint Venture agreement is itself a genuine issue of material fact.  Although ACI submits a draft of a Joint Venture agreement between the parties, it is neither signed nor otherwise authenticated, and Guang Dong contends it was never executed.  The emails between the parties also suggest that they contemplated the agreement, yet stop short of contract formation.

Assuming, *arguendo*, that this agreement was executed, the parties disagree over whether they

---

[63]   Guang Dong refers the Court to exhibit 1, page 19 for the source of this notice.  That particular page is the first page of the english translation of the arbitration award.  The Court is only able to locate two pages in that exhibit that appear to relate to notice.  One is captioned: "ADVICE NOTIFYING THE FORMATION OF THE PANEL OF ARBITRATORS FOR THE DISPUTE OVER THE CAP PURCHASE AND SALE CONTRACT OF CAPS No. G20010386."  (Ex. 1, at 6.)  The other is captioned: "ADVICE NOTIFYING THE OPENING OF THE COURT SESSION FOR THE DISPUTE OVER THE CAP PURCHASE AND SALE CONTRACT OF CAPS No. G20010386."  (Ex. 1, at 8.) There is no return receipt included in that exhibit with either of these documents, nor is there any indication on either Notice of an addressee.  Both pages are dated January 15, 2002.

agreed to arbitrate that dispute.  Under the rule set forth in *First Options*, this issue must be decided by

the court prior to compelling arbitration.[64]  Again, this is based on the well-settled principle that

arbitration is a matter of contract and should only be used to resolve disputes that the parties agreed to

submit to arbitration.[65]  Guang Dong argues that ACI's counterclaims of breach of contract and breach

of the duty of good faith and fair dealing should have been submitted to arbitration, and that the doctrine

of res judicata prevents this Court from relitigating the issues determined by the arbitration panel.

The arbitration award spoke to the purported Joint Venture agreement in two contexts.  First, it

was discussed in the section of the award that set forth what "the claimant alleged."  In that section, the

award states the following:

> On February 19, 2001, the two parties signed No. 21RQK041
> Contract.  Before and after the signing of that contract, Mr. Chris
> [Davis], president of the respondent once again made the guarantee to
> pay off the amount in arrears by fax and e-mail; but avoided to talk
> about the payment plan and made no further payment after a symbolic
> payment of USD 9,900.00.  Believing that the respondent would not
> fulfill its obligation of payment under No. 21RQK041 Contract, the
> claimant had a friendly consultation with the respondent and the Pearl
> Company and agreed to cancel the said contract in consensus.  On
> April 17, 2001, the claimant signed directly with the US client
> Paramount Company . . . according which the money for goods should
> be paid to the claimant directly by Paramount Company.  Because
> Paramount Company entrusted the respondent to take charge of affairs
> such as the transport arrangement for this contract and the customs
> clearance in the United States, etc., the claimant received USD
> 100,080.00 as the amount for the goods under the contract, which
> include: USD 29,700.00 in total for the expenses of . . . fee[s] . . .

---

[64]  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Bridgestone/Firestone, Inc. v. Local Union No. 998*, 4 F.3d 918, 921 (10th Cir. 1993).

[65]  *First Options*, 514 U.S. at 943; *Cummings v. Fedex Ground Package Sys., Inc.*, __F.3d __, No. 04-1247, 2005 WL 906584, at * 3 (10th Cir. Apr. 20, 2005).

> which should be paid to the respondent.  At present, the said amount is
> still detained on the account of the claimant for the time being.

Second, in its award, the panel setoff the amount ACI owed under the "Sales Contracts" by the amount
it found Guang Dong owed ACI under the cancelled Joint Venture agreement.  The Court must
determine if this treatment by the arbitration panel precludes ACI's counterclaims, taking care not to
allow relitigation of issues already determined by arbitration.[66]

The doctrine of res judicata precludes a party or its privies from relitigating issues that could
have or should have been raised in a prior action that constitutes a final judgment on the merits.[67]  It "is
*not* a jurisdictional bar; it is an affirmative defense, subject to waiver."[68]  For res judicata to apply, the
defendant has the burden of proving: (1) the prior suit ended with a judgment on the merits, (2) the
parties are identical or in privity with one another, and (3) the suit is based on the same cause of
action.[69]  There is no dispute that the arbitration involved the same parties as those present in this case.
Additionally, it is well-settled that an arbitration award may constitute a judgment on the merits, for the
purposes of res judicata.[70]

Therefore, the Court must determine if the "causes of action" were the same.  The Tenth Circuit

---

[66] *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 590 (7th Cir. 2001), *cert. denied*, 534 U.S. 828 (2001) (finding plaintiff's complaint sought to relitigate issues already decided by an international arbitration panel).

[67] *B-S Steel of Kan., Inc. v. Tex. Indus., Inc*. 327 F. Supp. 2d 1252, 1258 (D. Kan. 2004).

[68] *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 479 (10th Cir. 2002).

[69] *E.g., Wilkes v. Wyo. Dep't of Employment*, 314 F.3d 501, 504 (10th Cir. 2002); *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226-27 n.4 (10th Cir. 1999); *B-S Steel of Kan., Inc.*, 327 F. Supp. at 1258.

[70] *Coffey v. Dean Witter Reynolds Inc*., 961 F.2d 922, 925 n.4 (10th Cir. 1992); *B-S Steel of Kan., Inc.*, 327 F. Supp. at 1258.

employs the "transactional approach" from the Restatement (Second) of Judgments in order to

determine what constitutes a "cause of action."[71]   Under this approach, the cause of action "includes all

claims or legal theories of recovery that arise from the same transaction, event, or occurrence."[72]  "This

circuit also recognizes that 'a contract' is generally considered to be a 'transaction,' so that all claims of

contractual breach not brought in an original action would be subject to bar of claim preclusion, so long

as the breaches antedated the original action."[73]

Here, ACI's counterclaims are rooted in a purported contract, or "transaction," that is not

within the same series of contracts or "transactions" that were submitted to the arbitration panel for

decision.  Indeed, when Guang Dong submitted the arbitral award to this Court for confirmation, it

failed to attach the Joint Venture agreement.   The fourteen Sales Contracts were drafted on identical

forms, whereas the purported Joint Venture agreement involved a different agreement for the sale of

goods, a different contractual relationship, and different language which did not include an arbitration

clause.  The transactions also involved different third parties.

Further, the arbitration panel did not conclusively determine whether the Joint Venture

agreement was executed.  The extent of the award on this subject matter relates to Guang Dong's

representation of that contract and to the setoff amount of the award, based on money Guang Dong

owed to ACI under that purported contract.  The arbitration panel only issued an opinion about the

_____

[71] *Wilkes*, 314 F.3d at 504 (citing *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335 (10th Cir. 1988)).

[72] *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169-70 (10th Cir. 2000)

[73] *Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1238 (10th Cir. 1992), *cert. denied*, 506 U.S. 832 (1992).

liabilities of the parties on the fourteen Sales Contracts and did not make any independent findings with

regard to the purported Joint Venture agreement.  The panel restricted its award to the setoff amount

based on Guang Dong's representations about the Joint Venture agreement. This Court declines to bar

litigation of counterclaims arising out of this distinct purported contract on the basis of res judicata

because they involve a different transaction.

  Guang Dong urges the Court to compel arbitration if it finds that res judicata does not bar the

counterclaims.  Article II of the Convention requires the Court to recognize an agreement in writing[74] to

arbitrate unless the agreement is "null and void, inoperative, or incapable of being performed."[75]  Also,

the Tenth Circuit follows a four-part test to determine if a dispute should be referred to arbitration: "(1)

Is there an agreement in writing to arbitrate the subject of the dispute? (2) Does the agreement provide

for arbitration in the territory of the signatory of the Convention? (3) Does the agreement arise out of a

legal relationship whether contractual or not, which is considered as commercial? (4) Is a party to the

agreement not an American citizen, or does the commercial relationship have some relation with one or

more foreign states?"[76]

  The Court finds that the first requirement here is not met.  Even if this Court were to find that

the Joint Venture agreement was in fact executed, the only draft submitted to the Court does not

---

[74] The Convention defines "agreement in writing" to "include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange o letters or telegrams."  New York Convention, art. II(2).

[75] *Id.*, art. II.

[76] *Malarky Enters. v. Healthcare Tech., Ltd.*, 962 F. Supp. 1427, 1429 (D. Kan. 1997), *rev'd on other grounds*, 153 F.3d 727 (10th Cir. 1998); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 959 (10th Cir. 1992), *cert. denied*, 506 U.S. 102 (1992).

include an arbitration clause.  Further, Guang Dong does not demonstrate that this dispute would be

incorporated into the arbitration clauses found in the Sales Contracts.  The language in those provisions

applies to "[a]ll disputes arising from the execution of, or in connection with *this contract*."  The Court

finds that this clause is narrow, and therefore will only apply to a dispute "if it relates to an issue that is

on its face within the purview of the clause, and collateral matters will generally be beyond its

purview."[77]  If the parties executed the Joint Venture agreement, any dispute relating to that agreement

would be, at best, a "collateral matter" to the Sales Contracts.  The plain language of the arbitration

clauses supports the interpretation that they only apply to disputes concerning each of those particular

Sales Contracts.

     The Court also declines to compel arbitration of ACI's counterclaims under the New York

Convention.  Guang Dong fails to provide the court with any written agreement to arbitrate the subject

of the counterclaims.  The doctrine of res judicata does not bar ACI from asserting these counterclaims,

nor do the Sales Contracts require that the counterclaims be submitted to arbitration.  The Court notes

that Guang Dong's positions on this matter are highly contradictory.  Guang Dong urges the Court to

confirm the arbitration award; in that proceeding, Guang Dong had claimed that it "cancelled" an

existing Joint Venture agreement with ACI out of fear that ACI would not pay them.  On the other

hand, Guang Dong now maintains that it never executed a Joint Venture Agreement with ACI..  The

Court reiterates that there exists a genuine issue of material fact as to whether this contract was ever

executed in the first instance.

---

[77] *Cummings v. Fedex Ground Package Sys., Inc.*, __F.3d __, No. 04-1247, 2005 WL 906584, at * 4 (10th Cir. Apr. 20, 2005) (citations omitted).

In conclusion, the Court is unable to confirm the arbitral award at issue to the extent that determines the rights and liabilities of the parties under any Joint Venture agreement that may have existed because Guang Dong failed to submit the requisite jurisdictional documentation of such an agreement pursuant to article IV of the Convention.  The Court also finds that there exist genuine issues of material facts with regard to, (1) whether Guang Dong and ACI had a contractual relationship based on the fourteen Sales Contracts, (2) whether ACI was accorded proper notice of the foreign arbitration, and (3) whether the parties executed a Joint Venture agreement.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Summary Judgment (Doc. 18) is **DENIED**.

IT IS SO ORDERED.

Dated this 10th   day of May 2005.


    S/ Julie A. Robinson
**Julie A. Robinson**
**United States District Judge**