ams

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **Guang Dong Light Headgear Factory Co., Ltd.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **ACI International, Inc.,** ) | |
| ) | |
| **Defendant.** ) | |
| ————————————————————) | |
| ) | **Case No. 03-4165-JAR** |
| **ACI International, Inc.,** ) | |
| ) | |
| **Counterclaim Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **Guang Dong Light Headgear Factory Co, Ltd.,** ) | |
| **Alex He, and ATTA International Inc.,** ) | |
| ) | |
| **Counterclaim Defendants.** ) | |
| ————————————————————) | |

**MEMORANDUM AND ORDER**

This matter began in 2003 as a civil action brought by plaintiff/counterclaim defendant

Guang Dong Light Headgear Factory ("Guang Dong") against defendant/counterclaim plaintiff

ACI International, Inc. ("ACI"), asking this Court to affirm and enforce a foreign arbitration

award by the China International Economic and Trade Arbitration Commission that had been

entered against ACI.  Guang Dong later amended its Complaint and added claims for breach of

contract, quantum meruit, and unjust enrichment (Doc. 94).  In 2004, ACI filed counterclaims

against Guang Dong and in 2006, amended the counterclaims to add new claims and new parties

Alex He and ATTA International, Inc. ("ATTA").  According to ACI, up until March 2006,

Guang Dong had responded that it had no responsive documents to ACI's discovery requests for all communications between Alex He and Guang Dong from February 2001 to the present. Then, on March 7 and 8, 2006, Guang Dong amended these responses and revealed for the first time correspondence between Alex He and Guang Dong that form the basis for ACI's amended counterclaims in August 2006.

The Court now considers Counterclaim Defendant ATTA International Inc's Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Pursuant to Rule 12(b)(6) (Doc. 111) and Counterclaim Defendant Alex He's Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 113). For the reasons explained below, the Court denies both motions to dismiss.

## I.      Background

The following facts are derived from the pleadings; in particular, ACI's Amended Counterclaims against Alex He and ATTA, drawing all inferences in favor of ACI. Guang Dong, a cap manufacturer, is organized under the laws of the People's Republic of China with its principal place of business in Tangyong, Xinshi, Guangxhou China. ACI is organized under the laws of the state of Kansas with its principal place of business in Olathe, Kansas. ACI is in the business of securing the production and importation of custom-made caps worn by American workers. ACI had a business relationship with Guang Dong, which is a cap manufacturer.

Mr. Hua was the general manager at Guang Dong during the period of time ACI conducted business with the company. Sometime in 1998 or 1999, Mr. Hua asked Christopher Davis, President of ACI, if he could employ his son, Alex He, at ACI in the United States. Mr. Davis agreed and ACI secured a visa for Mr. He. In 2000, Mr. He came to the United States and began to work as an ACI employee. As a condition of employment, Mr. He signed a non-

competition agreement, which prohibited him from "contacting or dealing with ACI's manufacturer, vendor and customer contacts with respect to any product line carried or planned to be carried by ACI as of the date of termination of employment."

Mr. He returned to China for the Chinese New Year in January 2001, with Mr. Davis's permission, but never returned.  Yet, ACI continued to employ Mr. He for a number of months thereafter.  In February 2001, ACI and Guang Dong negotiated a Joint Venture Agreement whereby Guang Dong would manufacture products which were to be "exclusively distributed and sold through ACI" to a specified list of ACI's customers, one of whom was Paramount Headwear, Inc. ("Paramount").  During the course of these negotiations, Mr. He translated for the parties, conversations surrounding the Joint Venture Agreement.  On or about February 15, 2001, Mr. He sent an email to Mr. Davis representing that Guang Dong had agreed to the terms of the Joint Venture Agreement.

ACI then sent a purchase order to Guang Dong for the production and manufacture of a hat order placed by Paramount.  After receiving the purchase order, Guang Dong forwarded a sales contract to ACI dated February 19, 2001 and it was signed by Mr. Hua on behalf of Guang Dong and Mr. Davis on behalf of ACI.  The sales contract specified that Guang Dong would ship the Paramount hat order on or before March 31, 2001.  But Guang Dong held up production of this order and informed ACI on March 24, 2001 that it had not yet begun to produce the hats because ACI had not made payments of other amounts which were allegedly past due.  ACI was therefore forced to allow Guang Dong to contract directly with Paramount to fill this order.

In the summer of 2001, unbeknownst to ACI, Mr. He returned to the United States and founded ATTA, which competed with ACI for headwear and apparel sales.  ATTA is a Texas

3

corporation, located in Dallas, Texas.  In late 2002, Mr. He met with a representative of

Paramount and solicited and obtained its business on behalf of ATTA.  ATTA then contracted

with Guang Dong to manufacture hats for Paramount.  Between 2003 and 2005, Guang Dong

made more than $3,000,000 in sales of Paramount headwear for ATTA.

## II.      Timeliness of Responses

Mr. He and ATTA both argue that ACI's responses and memoranda in support were filed

out of time and thus, the motions should be granted as uncontested.  Both motions to dismiss

were filed on October 16, 2006.  On October 18, Judge Sebelius entered an Order granting ACI's

unopposed motion for extension of time and extended the deadline for filing a response to

November 13, 2006.[1]  ACI filed four responsive documents to the motions to dismiss at the

following times, according to the electronic filing receipts: (1) response to ATTA's motion to

dismiss, filed November 14, 2006 at 0:53 AM CST (Doc. 120)[2]; (2) memorandum in response to

ATTA's motion to dismiss, filed on November 14, 2006 at 0:57 AM CST (Doc. 121); (3)

response to Mr. He's motion to dismiss, filed on November 14, 2006, at 1:55 AM CST (Doc.

122), and (4) memorandum in response to Mr. He's motion to dismiss, filed on November 14,

2006 at 1:56 AM CST (Doc. 123).

None of these documents were filed by the November 13, 2006 deadline and ACI did not

seek leave of Court to file them out of time.[3]  Under D. Kan. R. 7.4, "[t]he failure to file a brief

---

[1]The responses were originally due on November 8, 2006.  *See* D. Kan. R. 6.1(d)(2) (providing 23 days from the date of service of the motion).

[2]While the docket sheet reflects that this document was filed on November 13, 2006, the electronic filing receipt shows that it was filed at 12:53 a.m. on November 14.

[3]*See* D. Kan. R. 15.1.

or response within the time specified within Rule 6.1(d) shall constitute a waiver of the right thereafter to file such brief or response, except upon a showing of excusable neglect. . . . If a respondent fails to file a response within the time required by Rule 6.1(d), the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." Excusable neglect is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant.[4]  The determination of whether excusable neglect has been established is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission including: (1) the danger of prejudice; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reasons for the delay, which includes whether it was within the reasonable control of the party seeking to show excusable neglect; and (4) whether that party acted in good faith.[5]

While the delay in this case was within the control of ACI's counsel, there is no indication that the delay caused Mr. He and ATTA prejudice or that the not quite two-hour delay had an impact on the judicial proceedings.  The Court sincerely doubts that Mr. He and ATTA would have been in any better position to reply had the responsive documents been filed at 11:59 p.m. on November 13.  There is also no evidence that ACI acted in bad faith.  While the Court admonishes ACI for filing these documents outside the provided period of time, it declines to grant these motions solely based on D. Kan. R. 7.4.

---

[4]*Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 391–92 (1993).

[5]*Id.* at 395; *see also City of Chanute v. Williams Natural Gas*, 31 F.3d 1041, 1046 (10th Cir. 1994).

III.    **Discussion**

    *A.*       *Motion to Dismiss ATTA for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)*

ACI asserts counterclaims against ATTA for breach of the Kansas Uniform Trade Secrets Act (KUTSA) and (2) civil conspiracy. ATTA moves to dismiss these claims for lack of personal jurisdiction pursuant to Rule 12(b)(2). ACI, as the counterclaim plaintiff, bears the burden of establishing personal jurisdiction over the nonresident counterclaim defendant, ATTA.[6] This requires a showing that jurisdiction is proper under the laws of the forum state, Kansas, and that the exercise of jurisdiction would not offend due process.[7] Because the Court declines to hold an evidentiary hearing on this matter, ACI need only make a prima facie showing of personal jurisdiction to defeat the motion.[8] The Court accepts as true the allegations set forth in the Amended Counterclaim; ATTA has not submitted any written materials or affidavits to the Court to controvert these allegations.

In *OMI Holdings, Inc. v. Royal Insurance Co. of Canada*,[9] the Tenth Circuit noted that because the Kansas long arm jurisdiction statute is liberally construed by Kansas courts, jurisdiction is generally considered proper under Kansas law and courts proceed directly to the

---

[6]*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988)).

[7]*Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

[8]*Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) (citing *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999)). Eventually, plaintiff must establish personal jurisdiction by a preponderance of the evidence, either at a pretrial hearing or at trial. However, until that time, unless ATTA can make a contrary presentation, a prima facie showing is sufficient. *See, e.g.*, *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1011, 1014 (D. Kan. 2006).

[9]149 F.3d at 1090 (citing *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994)).

6

due process issue.[10]  The Due Process Clause allows the exercise of personal jurisdiction over a nonresident defendant, so long as there are "minimum contacts" between the defendant and the forum state.[11]

The minimum contacts standard may be met in one of two ways: specific jurisdiction or general jurisdiction.  Specific jurisdiction exists if the nonresident defendant has purposefully availed itself of the privilege of conducting business in Kansas, and the injuries arise from the defendant's forum related activities.[12]  If a court's exercise of jurisdiction does not directly arise from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state.[13]  General jurisdiction exists when the defendant's contacts with the forum state are "so continuous and systematic that the state may exercise personal jurisdiction even when the claims are unrelated to the defendant's contacts with the forum state."[14]  For such jurisdiction to exist, the defendant must be conducting "substantial and continuous local activity in the forum state."[15]

Both parties confine their arguments on minimum contacts to a specific jurisdiction analysis.  This involves a two-step inquiry: (1) whether "'the defendant's conduct and

---

[10]*Id.*, 149 F.3d at 1090.

[11]*Intercon*, 205 F.3d at 1247 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

[12]*OMI Holdings*, 149 F.3d at 1091.

[13]*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984).

[14]*SF Hotel Co., L.P. v. Energy Invs., Inc*., 985 F. Supp. 1032, 1033 (D. Kan. 1997) (citing *Trierweiler v. Croxton & Trench Holding Corp*., 90 F.3d 1523, 1532–33 (10th Cir. 1996)).

[15]*Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (citations omitted).

connection with the forum State are such that he should reasonably anticipate being haled into court there,'"[16] and if so, (2) "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice."[17]

### 1.    Minimum Contacts

The defendant's contacts will be sufficient if the defendant purposefully directed its activities at residents of the forum, and if the plaintiff's claim "arises out of or results from actions by the defendant himself that create a substantial connection with the forum state."[18] ACI alleges personal jurisdiction over ATTA in the Amended Counterclaim as follows: "because ATTA has committed improper and/or tortuous [sic] acts against ACI causing injury in the State of Kansas."[19]  In determining ATTA's contacts with the forum State, the Court is cognizant that "[e]ach defendant's contacts . . . must be assessed individually."[20]  The Court evaluates both the quantity and quality of ATTA's contacts with the State of Kansas.[21]

The only contact with Kansas alleged in the Amended Counterclaim is that the improper or tortious acts committed by ATTA caused injury to ACI in Kansas.  The only arguably tortious act alleged in the Amended Counterclaim is for breach of the KUTSA.  Under this claim, ACI

---

[16]*Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)), *cert. denied*, 544 U.S. 974 (2005); *see also, e.g.*, *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276–77 (10th Cir. 2005).

[17]*Benton*, 375 F.3d at 1076 (quotations omitted).

[18]*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quotations and citations omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1217–18 (10th Cir. 2006); *Pro Axess, Inc.*, 428 F.3d at 1277.

[19](Doc. 95 at 8 ¶ 7.)

[20]*Calder v. Jones*, 465 U.S. 783, 790 (1984).  Mr. He does not contest personal jurisdiction in his motion to dismiss.

[21]*Pro Axess, Inc.*, 428 F.3d at 1270 n.5; *OMI Holdings*, 149 F.3d at 1092.

alleges that ATTA acquired knowledge of ACI's customer lists, ACI's method of soliciting

business, ACI's customer contacts and ACI's trade secrets from both Guang Dong and Mr. He,

ultimately causing damage to ACI in Kansas.  But ACI does not explain how ATTA acquiring

knowledge of trade secrets demonstrates that it purposefully directed its activities toward the

State of Kansas, nor does ACI explain how this knowledge could lead it to reasonably expect to

be haled into Court here.  Indeed, ACI readily admits that it had no knowledge of ATTA's

existence until last year.  Mr. He formed ATTA in 2001, after returning to the United States.

ATTA is not alleged to have been a party with ACI in any of the contracts discussed in the

Amended Counterclaim.  Thus, the Court need only determine if the injury allegedly caused by

the misappropriation of trade secrets under the KUTSA claim amounted to sufficient minimum

contacts with Kansas.

The Tenth Circuit addressed the issue in the context of tort claims in *Far West Capital,*

*Inc. v. Towne*.[22]  There, the court discussed the Supreme Court's decision in *Calder v. Jones*,

which held that a defendant's intentional tortious actions toward the plaintiff, which took place

in a non-forum state, were aimed at the forum state because most of the harm or "effects" were

felt in the forum state.[23]  The Tenth Circuit acknowledged that *Calder* has been applied by other

courts to business torts.[24]  The court concluded:

> [T]hat an out-of-state defendant has tortiously interfered with
> contractual rights or has committed other business torts that have
> allegedly injured a forum resident does not necessarily establish
> that the defendant possesses the constitutionally required minimum

---

[22]46 F.3d 1071 (10th Cir. 1995).

[23]*Id.* at 1077 (discussing *Calder v. Jones*, 465 U.S. 783, 787 (1983)).

[24]*Id.* at 1077–79.

contacts. Instead, in order to resolve the jurisdictional question, a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws. The Supreme Court's observations in *Burger King*, although specifically addressed to a breach of contract claim, provide a useful framework. We therefore examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." In addition, we examine the contacts created by the out-of-state defendant in committing the alleged tort.[25]

If the misappropriation of trade secrets claim is construed as a business tort for the purposes of a jurisdictional analysis, the Court finds that ACI has alleged a prima facie case of minimum contacts.  While ATTA itself did not act in the State of Kansas, the Amended Counterclaim alleges that its agent, Mr. He, formed ATTA for the express purpose of misappropriating the trade secrets he learned through his employment with ACI.  The contacts ATTA established with Paramount in particular, were allegedly intended to deprive ACI of Paramount's business, in the amount of $3 million.  As such, ATTA should have reasonably anticipated that the effects of the allegations made in this claim would be felt in Kansas.[26]

Even if ATTA is correct and the misappropriation of trade secrets should not be construed as a business tort, the Court still finds purposeful availment based on the relationship

---

[25]*Id.* at 1079–80 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

[26]ACI contends that ATTA has sufficient minimum contacts under the Kansas long-arm statute, citing the recent case of *Merriman v. Crompton Corp.*, 146 P.3d 162 (Kan. 2006).  In that case, the Kansas Supreme Court determined that a price-fixing conspiracy could be considered a "tortious act" for purposes of K.S.A. § 60-308(b)(2), and the corollary principal that a "tortious act is deemed to have occurred in the state where the injury occurs."  *Id.* at 180 (citing *Ling v. Jan's Liquors*, 703 P.2d 731 (Kan. 1985)).  K.S.A. § 60-308(b)(2) allowed for personal jurisdiction when a defendant commits "a tortious act within the state."   K.S.A. § 60-308(b)(1)(B) (as amended).  Here, however, the Court assumes for the purposes of its analysis that personal jurisdiction lies under the Kansas long arm statute and proceeds to a due process inquiry.  Under its due process analysis, the *Merriman* court discussed the "stream of commerce" theory of specific jurisdiction.  *Id.* at 185 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  *Merriman* does not stand for the proposition that ACI only needed to allege an injury due to tortious conduct in order to establish minimum contacts under the Due Process Clause.  It specifically dealt with a "stream of commerce" theory of personal jurisdiction that is not present in this case.

between Mr. He and ACI.  The KUTSA claim relies upon the misappropriation of trade secrets that Mr. He, an agent of ATTA, became aware of through his previous employment with ACI, a Kansas resident.  It should have been foreseeable to ATTA that misappropriation of those trade secrets would cause harm to ACI in Kansas, given the allegations in the Amended Counterclaim and that ATTA could be forced to defend itself in a Kansas forum.[27]

Of the competing cases relied upon by the parties, this Court finds *Thermal Components Co. v. Griffith*[28] most instructive and on point.  There, Judge Lungstrum addressed a personal jurisdiction challenge involving a corporate defendant who had  hired a number of plaintiff's former employees, allegedly misappropriating trade secrets.[29]  After concluding that personal jurisdiction had been established with regard to the individual defendants, Judge Lungstrum addressed personal jurisdiction over the corporate defendant:

> As an entity capitalizing on the knowledge held by plaintiff's former employees, defendant [] should have been aware that its role in benefitting from the individual defendants' tortious activities would harm plaintiff, a Kansas resident, and that the derivation of such benefits at plaintiff's expense would require it to defend itself in the plaintiff's forum state.  Thus, the court concludes that the defendants' contacts with this state are sufficient to subject them to the jurisdiction of this court.[30]

Similar to the defendant in *Thermal Components*, this Court finds that ACI has alleged sufficient facts to conclude that ATTA should have foreseen that its role in benefitting from Mr. He's knowledge would harm ACI and could require it to defend itself in a Kansas court.

---

[27]*See Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1229 (D. Kan. 2000).

[28]*Id.*

[29]*Id.* at 1226–27.

[30]*Id.* at 1230.

ATTA argues that this case is distinguishable because the plaintiff in *Thermal Conceptions* alleged a number of tort claims and not just a statutory misappropriation of trade secrets claim.  ATTA urges that this basis for extending jurisdiction applies strictly to tort claims and not to a claim under the KUTSA, citing *Blue Beacon International, Inc. v. American Truck Washes, Inc.*[31]  There, the plaintiff argued personal jurisdiction over a non-resident defendant because one of its agents came into the state to solicit names of former or soon-to-be former employees of the plaintiff.[32]  The plaintiff alleged that "there was a concerted attempt by [the defendant] to raid Blue Beacon of its employees, misappropriate Blue Beacon's trade secrets and harm Blue Beacon at its corporate home in Salina, Kansas."[33]  But the *Blue Beacon* court did not find that a misappropriation of trade secrets claim is *per se* not amenable to a personal jurisdiction analysis based on the fact that the injury occurred in Kansas.  Instead, the Court found that jurisdiction based on location of the injury was not appropriate under the facts of that case because the act complained of was not a purposeful action and because the resulting injury did not occur within the State of Kansas.[34]  Unlike in *Blue Beacon*, there is no question that the injury here occurred in the State of Kansas.  Further, the "purposeful action" requirement articulated by the court in *Blue Beacon* has been questioned by later decisions in this district.[35]

---

[31]866 F. Supp. 485 (D. Kan. 1994).

[32]*Id.* at 489

[33]*Id.*

[34]*Id.*; *see also First Magnus Fin. Corp. v. Star Equity Funding, L.L.C.*, No. 06-2426-JWL, 2007 WL 635312, at *6 (D. Kan. Feb. 27, 2007).

[35]*See Dazey Corp. v. Wolfman*, 948 F. Supp. 969, 972 (D. Kan. 1996) (quoting *Continental Am. Corp. v. First Nat'l Bank*, No. 93-1415, 1994 WL 326771, at *2 (D. Kan. June 22, 1994) and citing *Taylor v. Phelan*, 912 F.2d 429, 432 (10th Cir. 1990); *Head v. Platte County, Mo.*, 749 P.2d 6 (Kan. 1988)).

While both *Blue Beacon* and *Thermal Conceptions* address claims for misappropriation of trade secrets, *Thermal Conceptions* discusses the due process analysis of such claims much more extensively than the court in *Blue Beacon*.  The Court finds that, based on the facts alleged in the Amended Counterclaim, ATTA should have reasonably foreseen the injury allegedly suffered by ACI, and thus reasonably foreseen that it could have to defend itself in a Kansas court.  Also, ACI alleges facts that the claims "arise out of or result from" Mr. He's forum related activities as an agent of ATTA.

Alternately, ACI has established minimum contacts under a conspiracy theory of jurisdiction.  Under this theory, personal jurisdiction over a nonresident conspirator is sufficient to establish personal jurisdiction over a nonresident coconspirator.[36]  As applied to the parties in this case, this Court's personal jurisdiction over Mr. He and Guang Dong would extend to ATTA as a coconspirator.  But under this theory, ACI also must establish that ATTA was or should have been aware of any substantial acts performed in Kansas in furtherance of the conspiracy.[37] The Amended Counterclaim alleges that "at the time Alex He and Guang Dong reached their meeting of the minds as to the object or common plan or design to be accomplished, Mr. He contemplated the formation of ATTA."[38]  Given the fact that Mr. He created ATTA, it is reasonable to assume that ATTA was aware of the tortious activity allegedly committed by Mr. He and Guang Dong in the State of Kansas.  ACI further alleges that the entire purpose for Mr.

---

[36]*Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 (10th Cir. 1983); *Campbell v. Bank of Am., N.A.*, 404 F. Supp. 2d 1292, 1303–04 (D. Kan. 2005); *Merriman v. Crompton Corp.*, 146 P.3d 162, 186 (Kan. 2006) ("it has been observed that asymmetry would result if coconspirators are allowed to enjoy the benefits and protections of the forum state's laws without being subject to personal jurisdiction in that forum.").

[37]*Am. Land Program*, 710 F.2d at 1454; *Campbell*, 404 F. Supp. 2d at 1304.

[38](Doc. 95 at 24.)

He's formation of ATTA was to facilitate misuse of the knowledge Mr. He obtained through his previous employment and negotiations with ACI.  ATTA has come forward with no evidence to controvert these allegations.  As such, the Court finds that ACI has established a prima facie case of minimum contacts under a conspiracy theory of jurisdiction.

### 2.  Traditional Notions of Fair Play and Substantial Justice

The Court must also analyze whether its exercise of jurisdiction is reasonable by determining whether or not it  "offends notions of fair play and substantial justice."[39]  In doing so, the Court must consider the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.[40]

This reasonableness inquiry is conducted on a sliding scale: "the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction."[41]

While ATTA is not located in any manner in Kansas, the Court finds the burden on ATTA is not onerous, considering its relationship with Mr. He.  "'States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.'"[42]  Furthermore, the State has an interest in resolving disputes that involve their

---

[39]*Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 113 (1987).

[40]*Id.*; *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998).

[41]*Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005).

[42]*Id.* (quoting *OMI Holdings*, 149 F.3d at 1096).

own laws.[43]  Because ACI is located in Kansas and the case involves the application of Kansas law, the State of Kansas has an interest in providing ACI with a forum to litigate.

The factors concerning ACI's interest in convenient and effective relief and the judicial system's interest in obtaining an efficient resolution, also weigh in favor of exercising jurisdiction.  Given the interrelatedness of ACI's claims against Guang Dong, Mr. He, and ATTA, it would not be convenient or effective to pursue this litigation in another forum.  Guang Dong filed the Complaint in this case and ACI has responded and filed counterclaims against Guang Dong, Mr. He, and ATTA, including a claim against all three for civil conspiracy.  While ACI could file claims in Texas, this would be inconvenient given that they have been filed in this case as counterclaims, especially considering the already protracted nature of this litigation.  Finally, the Court sees no reason why its exercise of jurisdiction would affect the substantive policy interests of any other state.  In sum, the Court finds that the reasonableness factors weigh in favor of exercising jurisdiction over ATTA.  Accordingly, ATTA's motion to dismiss for lack of personal jurisdiction is denied.

### B.  Motions to Dismiss Alex He and ATTA Pursuant to Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint and should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[44]  When deciding a motion to dismiss, the Court "must accept as true the plaintiff's well-pleaded

---

[43]*Id.*

[44]*Callery v. U.S. Life Ins. Co.*, 392 F.3d 401, 404 (10th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)); *Martinez v. Roth*, 53 F.3d 342, 342 (10th Cir. 1995), *cert. denied*, 516 U.S. 1012 (1995).

factual allegations and all reasonable inferences must be indulged in favor of the plaintiff."[45]

The Court's function "is not to weigh potential evidence that the parties might present at trial,

but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim."[46]

In their motions, Mr. He and ATTA challenge most of ACI's counterclaims on statute of

limitations grounds.[47]  Statute of limitations questions may be resolved on a motion to dismiss,

and "when the dates given in the complaint make clear that the right sued upon has been

extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute."[48]

The parties agree that Kansas law applies.  The parties also agree that Kansas' two-year statute

of limitations applies to the following claims: (1) breach of fiduciary duty against Mr. He (Count

V); (2) fraud against Mr. He (Count VIII); (3) tortious interference with contract against Mr. He

(Count IX ); and (4) tortious interference with prospective business advantage or relationship

against Mr. He (Count X).[49]  The parties also agree that a three-year statute of limitations applies

to the KUTSA claim against Mr. He and ATTA (Count XI).  The issue in this case surrounds

when the counterclaims against Mr. He and ATTA accrued for purposes of the statute of

limitations and whether those claims were extinguished by the time ACI filed its amended

counterclaims on August 11, 2006.

### 1.  Fraud Claim

---

[45]*Martinez*, 53 F.3d at 342 (quoting *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987)).

[46]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[47]Mr. He's motion to dismiss does not address Count VII against him for Violation of Non-Competition Agreement.

[48]*Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

[49]*See* K.S.A. § 60-513(a).

Under K.S.A. § 60-513(a)(3), the two-year statute of limitations period applicable to claims for fraud "shall not be deemed to have accrued until the fraud is discovered." Under Kansas law, "the fraud is discovered at the time of actual discovery or when, with reasonable diligence, the fraud could have been discovered."[50] Constructive notice is sufficient to trigger the statute.[51] However, mere suspicion of wrong does not suffice, "'even though his suspicions might have been aroused a party may be lulled into confidence by certain misrepresentations and forego any further investigation.'"[52]

The basis for the fraud claim against Mr. He in the Amended Counterclaim is that Mr. He's February 15, 2001 email to Mr. Davis, stating that Guang Dong had agreed to the Joint Venture Agreement, was either a knowingly false representation, or a representation that he recklessly made without knowledge of the fact that Guang Dong did not agree to the Joint Venture Agreement. The Amended Counterclaim further alleges that Mr. He sent the email intentionally and for the purpose of inducing ACI to act upon it. Mr. He argues that the fraud claim accrued on February 15, 2001, when he sent the email, while ACI argues that the claim did not accrue until March of 2006 when Guang Dong disclosed the information about Mr. He returning to the United States to form ATTA and contract with Paramount. According to ACI, it had no reason prior to this time, to believe Mr. He had any incentive to cause its injuries.

The discovery rule in K.S.A. § 60-513(a)(3) clearly refers to the discovery of the fraud,

---

[50]*Cline v. S. Star Cent. Gas Pipeline, Inc.*, 191 Fed. App'x 822, 827–29 (10th Cir. 2006); *Waite v. Adler*, 716 P.2d 1, 6 (Kan. 1986).

[51]*See Sutton v. Sutton*, 118 P.3d 700, 703 (Kan. Ct. App. 2005) (citing *Armstrong v. Cities Serv. Gas. Co.*, 502 P.2d 672, 682 (1972)).

[52]*Price v. Grimes*, 677 P.2d 969, 972 (Kan. 1984) (quoting *Augusta Bank & Trust v. Broomfield*, 643 P.2d 100, 108 (Kan. 1982)); *see also Dodson Int'l Parts, Inc. v. Hiatt*, No. 02-4042-SAC, 2003 WL 22327176, at *7 (D. Kan. Sept. 25, 2003).

not the fraudulent act itself.  While constructive notice is sufficient, it is not at all clear from the face of the Amended Counterclaim that ACI had constructive notice of the alleged fraud here. Mr. He points to nothing in the Amended Counterclaim that would allow this Court to conclude that ACI knew or had reason to know before August 2004 that Mr. He made these alleged misrepresentations in order to induce ACI to believe that Guang Dong in fact agreed to the Joint Venture Agreement.  The entire basis for ACI's motion for leave to amend, which was granted, was the new information learned during the course of discovery in March 2006.  According to ACI, up until March 7, 2006, Guang Dong affirmatively represented that it had no documents or correspondence responsive to its request for such between Alex He and Guang Dong.  Also, according to ACI, Guang Dong misrepresented that it had not conducted business with Paramount after filling that first order pursuant to the Joint Venture Agreement.  Therefore, ACI was lulled into reliance by Guang Dong's representations and the action for fraud against Mr. He was timely filed.  For all of these reasons, the Court is unable to find that the Amended Counterclaim makes clear that the fraud claim against Mr. He is extinguished.

### 2. KUTSA Claim

An action for misappropriation under the KUTSA "must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."[53]  Again, Mr. He and ATTA claim that "the latest date of injury occurred in late 2002, when [the Amended Counterclaim] alleges Alex He allegedly met with Alex Levinson of Paramount."[54]  They argue that this is the date of accrual for purposes of the statute of

---

[53]K.S.A. § 60-3325.

[54](Doc. 114 at 10.)

limitations.        But this argument ignores the plain language of the statute.  For a misappropriation of trade secrets claim, the statute of limitations accrues when the *misappropriation is discovered*, or with reasonable diligence should have been discovered, not when the injury occurs.  While Mr. He and ATTA are correct that a date of discovery is not specifically provided in the Amended Counterclaim, this does not mean that the Amended Counterclaim makes clear that the right to relief has been extinguished on this claim.  Even under the reasonable diligence standard, Mr. He and ATTA provide no reason why the misappropriation should have been discovered prior to March 2006.[55]  ACI amended its counterclaims entirely because its diligent discovery efforts were thwarted.  Had ACI been provided with the discovery that led to its amended counterclaims against Mr. He and ATTA when the request was initially made, they could have arguably amended the counterclaim and joined these parties much sooner.  Under a discovery of the misappropriation accrual standard, the Court finds that ACI has alleged sufficient facts to support an accrual date of its KUTSA claim in March 2006.  Accordingly, the motions to dismiss are denied with respect to this claim.

### 3. Remaining Tort Claims

ACI's breach of fiduciary duty, tortious interference with contract, and tortious interference with prospective business relationship claims against Mr. He all fall under the two year statute of limitations because they are "action[s] for injury to the rights of another, not arising on contract."[56]  These claims

---

[55]*See McCaffree Fin. Corp. v. Ninnink*, 847 P.2d 1321, 1330–31 (Kan. Ct. App. 1993) (finding evidence in summary judgment record that  KUTSA statute of limitations expired because misappropriation was discovered earlier than three years prior to the filing of the lawsuit).

[56]§ 60-513(a)(4); *Bradbury Co. v. Teissier-duCros*, 413 F. Supp. 2d 1203, 1206 (D. Kan. 2006) (applying to tortious interference with contract claim).

> shall not be deemed to have accrued until the act giving rise to the
> cause of action first causes substantial injury, or, if the fact of
> injury is not reasonably ascertainable until some time after the
> initial act, then the period of limitation shall not commence until
> the fact of injury becomes reasonably ascertainable to the injured
> party, but in no event shall an action be commenced more than 10
> years beyond the time of the act giving rise to the cause of action.[57]

A "substantial injury" under this provision "does not require the injured party to have knowledge of the full extent of the injury to trigger the statute of limitations.  Rather, it means the victim must have sufficient ascertainable injury to justify an action for recovery of the damages, regardless of extent."[58]  Under Kansas' "fact of injury" standard, the statute of limitations does not begin to accrue until "the plaintiff is able to determine that her injury may be caused by some act of the defendant."[59]  It only begins to run at the time the tortious act causes injury "if both the act and the resulting injury are reasonably ascertainable by the injured person."[60]  ACI maintains that under the fact of injury standard, its tort counterclaims did not accrue until March 2006, when it discovered for the first time, despite diligent efforts to conduct discovery, that while Mr. He was still an ACI employee, he was allegedly engaged in tortious activity designed to harm ACI.

In its claim against Mr. He for breach of fiduciary duty, ACI alleges that he violated a fiduciary duty toward ACI: (1) when he falsely represented to it in February 2001 that Guang

---

[57] § 60-513(b).

[58] *See, e.g.*, *Moon v. City of Lawrence*, 982 P.2d 388, 394–95 (Kan. 1999).

[59] *See, e.g.*, *Benne v. Int'l Bus. Machs. Corp.*, 87 F.3d 419, 426–27 (10th Cir. 1996).

[60] *Moon*, 982 P.2d at 394; *see First State Bank v. Daniel & Assocs.*, –F. Supp. 2d–, No. 05-2505, 2007 WL 841610, at *3 (D. Kan. Mar. 20, 2007).

Dong consented to the terms of the Joint Venture Agreement; and (2) by obtaining ACI's customer information to further his own business purposes.  Again, ACI argues that it did not allege these counterclaims until August 2006 because Guang Dong had provided incomplete or inaccurate discovery responses up until March 2006, when ACI learned for the first time of Mr. He's role in the Joint Venture Agreement and subsequent formation of ATTA.  Mr. He does not controvert these facts and thus, the Court does not find that the Amended Counterclaim shows conclusively that this claim is extinguished.  Under the fact of injury standard, it is not clear from the Amended Counterclaim that ACI learned that its injuries were allegedly caused by an act of this particular party.

ACI alleges in Count IX, a claim for tortious interference with contract against Mr. He.  The claim alleges that Mr. He intentionally brought about the breach of ACI's contract with Paramount without justification.  ACI alleges in Count X, a claim for tortious interference with prospective business advantage or relationship.   For the same reasons explained above, the Court declines to dismiss these claims because even if ACI did know of its injuries in 2001, it argues that it did not discover its injuries were caused by this counterclaim defendant prior to two years before it filed the counterclaims.

Finally, Mr. He and ATTA argue that because the other claims are time-barred, the civil conspiracy claim must also fail.  In light of the Court's conclusion that none of the counterclaims are time-barred, the motions to dismiss are also denied with regard to the civil conspiracy claim.

## IV.  Conclusion

The Court finds that under the exacting standards to be applied to motions to dismiss under Rules 12(b)(2) and 12(b)(6), both motions to dismiss should be denied.  ATTA's motion to

dismiss for lack of personal jurisdiction is denied because ACI has established a prima facie case

of personal jurisdiction.  ACI has alleged facts sufficient to support personal jurisdiction under

the Due Process clause, specifically, that ATTA has minimum contacts with the State of Kansas

and that this Court's exercise of jurisdiction over ATTA is reasonable.  Finally, the Court finds

that none of the counterclaims asserted against Mr. He and ATTA are barred by the statute of

limitations.

   **IT IS THEREFORE ORDERED BY THE COURT** that Counterclaim Defendant

ATTA International Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or in the

Alternative Pursuant to Rule 12(b)(6) (Doc. 111) and Counterclaim Defendant Alex He's Motion

to Dismiss Pursuant to Rule 12(b)(6) (Doc. 113) are **denied.**

   **IT IS SO ORDERED**.

   Dated this 4th day of May 2007.

         S/   Julie A. Robinson
        Julie A. Robinson
        United States District Judge